DAVID J. SNODGRASS, D.D.S.            )
                                      )
v.                                    )
                                      )
                                      )
TENNESSEE DEPARTMENT OF               )    NO. 3:10-0282
FINANCE AND ADMINISTRATION,           )    JUDGE CAMPBELL
BUREAU OF TENNCARE and WENDY          )
LONG, M.D, individually and in her official )
capacity as Chief Medical Officer of the  )
Bureau of TennCare, JAMES A.          )
GILLCRIST, D.D.S., individually and in his )
official capacity as Dental Director of the )
Bureau of TennCare, and DENTAQUEST   )
OF TENNESSEE, LLC                     )

MEMORANDUM

Pending before the Court is a Motion to Dismiss Amended Complaint on Behalf of the Defendants Bureau of TennCare and Wendy Long, M.D., and James Gillcrist, D.D.S., in their Individual and Official Capacities (Docket No. 37). For the reasons set forth herein, Defendants' Motion is GRANTED.[1] Additionally, Defendants' previously filed Motion to Dismiss in Their Official Capacities (Docket No. 16) and Defendants' previous filed Motion to Dismiss in Their Individual Capacities (Docket No. 18) are dismissed as MOOT in light of the Amended Complaint.

---

[1] After Defendants filed their Motion to Dismiss Amended Complaint (Docket No. 37), the Plaintiff filed a Notice of Dismissal of the Tennessee Department of Finance and Administration, Bureau of TennCare as a defendant in this action (Docket No. 39). Defendant Manny Martins, in both his official and individual capacities, is dismissed for the same reasons as the other Defendants.

1

FACTS

Plaintiff is a dentist who has been practicing in the State of Tennessee since 1984 and has been a board-certified specialist in pediatric dentistry since 1986. Until 2003, Plaintiff was providing dental care and treatment through the TennCare Program, as well as Medicaid.

Since 1998, Plaintiff has been critical of the administration of the dental program run by what is now Defendant DentaQuest, the corporation chosen to administer the dental component of the TennCare program. From 1998 through 2002, Plaintiff was in involved in a number of campaigns to protest and criticize the activities and policies of DentaQuest, including a letter writing campaign, meeting with members of the TennCare Oversight Committee, speaking with members of the State legislature and speaking with TennCare officers. Plaintiff had a dispute with DentaQuest regarding the medical necessity of stainless steel crowns.

In 2002, DentaQuest accused Plaintiff of billing for services not provided and improper utilization of stainless steel crowns. The matter was submitted to peer review by the Nashville Dental Society, which found that Plaintiff accurately billed for services provided and that the utilization of the stainless steel crowns was proper. In June 2003, Plaintiff contacted Governor Bredesen and TennCare to express his concern regarding the mismanagement of the dental program by DentaQuest.

On July 9, 2003, DentaQuest notified Plaintiff by letter that his Provider Services Agreement was being terminated. DentaQuest provided no basis for the termination and Plaintiff was later advised that the agreement was being terminated without cause. On or about July 18, 2003, the Bureau of TennCare requested that the Tennessee Bureau of Investigation launch an investigation of Plaintiff's practice for possible criminal activity. The investigation commenced on July 29, 2003 and closed on September 10, 2004, with the conclusion that

Plaintiff had not engaged in any criminal activity.

Subsequently, Plaintiff brought suit against DentaQuest under 42 U.S.C. §1983 on February 1, 2008. That lawsuit settled in March 2009 and the parties entered into a Confidential Settlement Agreement that called for Plaintiff's reinstatement to the provider network. The settlement also provided that Plaintiff would be subject to the terms of the Office Reference Manual and the Provider Services Agreement, which are boilerplate agreements to which all providers must comply.

The Settlement Agreement also required Defendant DentaQuest to "expedite" the credentialing applications of Plaintiff. Plaintiff alleges there was not only a delay in sending the credentialing applications to his counsel, but that the applications were not "expedited" as required under the Settlement Agreement.

On April 29, 2009, Defendant Wendy Long, M.D., as Chief Medical Officer of the TennCare Bureau, released a memorandum regarding a new protocol to be applied to any providers being reinstated in a TennCare provider network. The Protocol was back-dated to April 1, 2009, and as such, applied to Plaintiff. The Protocol was allegedly applicable to providers who has been terminated from the managed care contractor's network for a set of reasons which are not germane for the current discussion.

Plaintiff did not believe he met any of the criteria necessary to be subject to the Protocol, but was nonetheless required to submit to and comply with a correction action plan which required providers be subjected to a number of reviews and submit authorizations for various procedures. Plaintiff was subject to this correction action plan for twelve months, at which point the plan expired by its own terms.

Plaintiff alleges he would not have agreed to settle and subsequently dismiss the original

3

cause of action against Defendant DentaQuest if he knew he would be subject to the terms and conditions of the corrective action plan. He further alleges he has continued to receive unjust scrutiny from Defendants related to the care and treatment of his patients. As a result, Plaintiff filed an amended complaint on May 28, 2010 against Defendants Long and Gillcrist alleging (1) a deprivation of Plaintiff's rights under 42 U.S.C. §1983, (2) interference with business and/or contractual relationship, and (3) conspiracy under Section 1983. On June 2, 2010, Defendants filed a Motion to Dismiss Amended Complaint on Behalf of the Defendants Wendy Long, M.D., and James Gillcrist, D.D.S., in Their Individual and Official Capacities. (Docket No. 37)

ANALYSIS

I. <u>Plaintiffs Claims Against Defendants in their Official Capacities</u>

Plaintiff alleges Defendants Long and Gillcrist deprived him of his clearly established rights and privileges in violation of 42 U.S.C. § 1983. (Docket. No. 34, p.12). In so far as Plaintiff is seeking monetary damages from Defendants Long and Gillcrist in their official capacities, his claims are barred by the Eleventh Amendment. Plaintiff further alleges he is seeking injunctive relief in the form of an order prohibiting Defendants from imposing additional obligations on him other than those imposed on other dental provider in the provider network. *Id.* While there is an exemption for injunctive relief under the Eleventh Amendment, the exception requires there be an ongoing controversy at all stages of the proceedings. As there is not currently an ongoing controversy, the exception to the Eleventh Amendment does not apply. Therefore, Defendants Long and Gillcrist's Motion to Dismiss in their Official Capacities is GRANTED.

    A. <u>Claims for Monetary Damages</u>

Plaintiff seeks both compensatory and punitive damages for Defendants' alleged violation of his Constitutional rights under 42 U.S.C. § 1983. (Docket No. 34, p. 15).

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish the deprivation of a right secured by the Constitution or laws of the United States caused by a person acting under the color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). Neither States nor state officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. §1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Whether a suit against State officials in their official capacities is deemed to be really against the State depends upon whether the plaintiff seeks retroactive of prospective relief. *Doe v. Wigginton*, 21 F.3d 733, 737 (6th Cir. 1994). "Retroactive relief compensates the plaintiff for a past violation of his legal rights. This compensation usually takes the form of money damages." *Id* at 736-37. Prospective relief merely compels the state officers' compliance with federal law in the future. *Id* at 737.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Even though the State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 1355-56, 39 L.Ed.2d. 662 (1974).

With regard to a relief of monetary damages against Defendants' in their official capacities, Plaintiff's claims are barred by the Eleventh Amendment.

B. <u>Claims for Injunctive Relief</u>

While the States' Eleventh Amendment immunity applies to actions against State

5

officials sued in their official capacity for money damage, the immunity does not apply if the lawsuit is filed against a state officer for purely injunctive relief enjoining the official from violating federal law. *Ernst v. Rising,* 427 F.3d 351 (6th Cir. 2005). The Supreme Court held that prospective injunctive relief against state officials in certain circumstances is permissible, even when the State is otherwise immune from suit. *Ex parte Young*, 209 U.S. 123, 156 (1908)("... [I]ndividuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action"); *Edelman v. Jordan*, 415 U.S. 651(when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief).

The doctrine of *Ex Parte Young* is regarded as carving out a necessary exception to Eleventh Amendment immunity, allowing federal courts to grant prospective injunctive relief to end a continuing violation of federal law. *Ex Parte Young*, 209 U.S. at 155-156. The exception is narrow: one of its limitations is that it applies only to ongoing and continuous violations of federal law, as opposed to cases in which federal law has been violated at one time or over a period of time in the past. *See Papasan v. Allain*, 478 U.S. 265, 277-78 (1986). An actual controversy must exist at all stages, not merely at the time the complaint is filed. *Steffel v. Thompson*, 415 U.S. 452, 460 n. 10 (1974).

In addition to seeking monetary relief as noted above, Plaintiff also requests injunctive relief "prohibited Defendants from imposing additional obligations on [him]. . . other than those imposed on every provider in the provider network." (Docket No. 34). At the time the

6

Case 3:10-cv-00282 Document 52 Filed 10/12/10 Page 6 of 16 PageID #: 488

complaint was filed carrying through to the date of this memorandum, there is no ongoing violation of federal for which this Court could or would be able to grant prospective injunctive relief. That Plaintiff was subjected to alleged illegal conduct in the past is insufficient to establish the existence of a present case or controversy. The corrective action plan of which Plaintiff complains expired by its own terms and Plaintiff remains bound by the terms of his Provider Service Agreement with DentaQuest which applies to *all* providers (Docket No. 49-1). The Court cannot enter an order to prevent additional obligations on Plaintiff that are merely speculative as to their future occurrence.

Because Plaintiff does not have a claim with regard to an ongoing controversy, he is not exempted by the doctrine laid out in *Ex Parte Young*, and his claim against Defendants in their Official Capacities is barred by the Eleventh Amendment.

With respect to their Official Capacities, Defendants' Motion to Dismiss Amendment Complaint is GRANTED.

II. Plaintiff's Claims Against Defendants in their Individual Capacities

    A.  Retaliation in violation of the First Amendment

Plaintiff alleges that Defendants "through their unlawful and unethical conduct" deprived Plaintiff of his "clearly established" constitutional rights; that Defendants' actions "constitute[d] retaliation" against Plaintiff for his speech protected by the First Amendment; that Defendants' actions were committed with malice; that breaches of contract were caused by the "malicious and unlawful actions and improper motives of Defendants;" that Defendants Long and Gillcrist conspired with Defendant DentaQuest

7

"in retaliation for Plaintiff's exercise of his First Amendment" rights and that Defendants "promulgated the Protocol and back-dated the effective date . . . for the purpose of retaliating against" Plaintiff for his speech (Docket No. 34).

Plaintiff further alleges Defendant DentaQuest terminated his provider services agreement in July 2003 after years of speech in which Plaintiff criticized DentaQuest for its administration of TennCare's dental program. April 29, 2009, Dr. Long released a memorandum regarding a new policy to apply to providers being reinstated into the TennCare provider network, with an effective date of April 1, 2009. Plaintiff alleges Defendant Long backdated the policy as a way to retaliate against him for his speech critical of Defendants six years prior. *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief." *Id.* at 557.

A retaliation claim in violation of the First Amendment requires that a plaintiff is (1) engaged in constitutionally protected conduct, (2) that the defendant's adverse action cause plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that conduct, and (3) that the constitutionally protected conduct was a motivating factor in the defendant's action. *Leonard v. Robinson*, 477

8

F.3d 347, 355 (6th Cir. 2007), *Fitz v. Charter Township of Comstock*, 592 F.3d 718 (6h Cir. 2010). It is uncontested that Plaintiff engaged in constitutionally protected conduct. The parties dispute whether Defendants acted adversely in a manner that caused Plaintiff to suffer an injury that prevented him from continuing to engage in his constitutionally protected conduct. In light of the ultimate resolution, that dispute need not be resolved.

The Sixth Circuit has previously reviewed the issue of a causal connection between a protected activity and alleged retaliation. *DiCarlo v. Potter*, 358 F.3d, 408, 412 (6th Cir. 2004) Where there is no direct proof, retaliation may be imputed if the timing of the retaliatory act is such to allow an inference of retaliation to arise. *Id.* In this circuit, as well as others, cases that have permitted an inference of retaliation based on proximity of time have consistently been short periods, usually less than six months. *Id., Mickey v. Zeidler Tool & Die Co.,* 516, 524 (6th Cir. 2008)(four months); *See Dixon v.* Gonzales, 481 F.3d 324, 334 (6th Cir. 2007)("Similarly, this Court has typically found the causal connection element satisfied only where the adverse . . . action occurred within a matter of months, or less, of the protected activity"); See *Cooper v. North Olmstead*, 795 F.2d, 1265 (6th Cir. Ohio 1986)(four months is too long); *Miller v. Fairchild Industries, Inc.* 797 F.2d 727, 731-32 (9th Cir. Cal. 1986)(two months).

The Supreme Court has noted "...[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish an prima facie case uniformly hold that the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). It has been about six years between Plaintiff's last incident of

9

critical speech against Defendants and the alleged retaliatory activity, namely the April 2009 policy. This rather large gap in time reflects a lack of causality between the speech and the alleged retaliatory conduct.

The six year time frame between the speech and the purported retaliation does not rise to the level of the *Twombly* "plausibility" standard. Therefore, Plaintiff has not stated a claim sufficient for relief and Defendants' Motion to Dismiss with regard to Plaintiff's First Amendment Retaliation claims is GRANTED.[2]

B. Due Process Claim

Plaintiff contends Defendants' actions unlawfully prevented him from "enjoying the full benefit of the settlement agreement between Plaintiff and Defendant DentaQuest and the provider agreement executed by the parties..." (Docket No. 34) Plaintiff further alleges "the actions of Defendants deprived [him] of the right and privilege to provide services to his patients and enforce his contract with DentaQuest without due process of law." *Id*.

For purposes of a cognizable due process claim, there must exist a "deprivation" of a protected property interest "within the meaning of the Due Process Clause." *Med. Corp. Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). For due process purposes, the deprivation is an action that "destroy[s] the value of utility of a protected property interest..." *Id.* at 412. Indirect injuries to the value of property are recognized as

---

[2] Count V: 42 U.S.C. § 1983 Conspiracy is dismissed since the Court has found no underlying constitutional violation.

constitutional "deprivations" only "when such indirect injuries effectively render the property valueless." *Id.* at 413.

A substantive due process right is "[t]he right not to be subject to "arbitrary or capricious" action by a state either by legislative or administrative action. *Pearson v. Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992) (quoting *Curto v. City of Harper Woods*, 954 F.2d 1237, 1243 (6th Cir. 1992)). The Supreme Court has stated that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions ' regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S Ct. 975, 108 L.Ed.2d 100 (1990)(quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 664, 88 L.Ed.2d 662(1986)). Where a substantive due process attack is made on state administrative action, the scope of review by the federal courts is extremely narrow. To prevail, a plaintiff must show that the state administrative agency has been guilty of "arbitrary and capricious action" in the strict sense, meaning "that there is no rational basis for the. . . [administrative] decision." *Pearson*, 961 F.2d at 1221 quoting *Stevens v. Hunt*, 646 F.2d 1168, 1170 (6th Cir. 1981). The federal scope of review under substantive due process is much narrower than the scope of review of a decision of a state administrative agency; in other words, the administrative action will withstand substantive due process attach unless it is not supportable on any rational basis or is willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case.'" *Id*. (Internal quotations omitted.) "The state decision may

11

not be set aside as arbitrary and capricious if there is some factual basis for the administration action." *Id* at 1222.

In order to establish a procedural due process claim under 42 U.S.C. §1983, a plaintiff must establish three elements: (1) that he has a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (2) that he was deprived of this protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford him adequate procedural rights prior to depriving him of the protected interest. *Hahn .v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

Plaintiff alleges he has a property interest in the Settlement Agreement and the Provider Services Agreement entered into with Defendant DentaQuest. Plaintiff also alleges Defendants have deprived Plaintiff of his protected interest in those Agreements through their retaliatory conduct as demonstrated by failing to provide any notice to Plaintiff prior to the effective date of the provider reinstatement policy and by back-dating the effective date of the policy to ensure that the policy applied to Plaintiff.

Contract rights are considered property under the Due Process Clause and Plaintiff's protected property interests are defined by the terms of the Settlement Agreement and the Provider Services Agreement. *See Perry v. Sindermann*, 408 U.S. 593, 601-02 (1962); *Charles v. Baesler*, 910 F.2d 1349, 1352-53 (6th Cir. 1990). Although Plaintiff alleges he was "deprived...of the right and privilege to provide services to his patients," the factual allegations of the Complaint show that Plaintiff continued to conduct his practice as a TennCare provider in DentaQuest's network

12

throughout the imposition of the corrective action plan. Defendants' decision to apply the corrective action plan to him, or place him under the Provider Services Agreement, was not arbitrary and capricious. Rather, the process appears to be the same as it applies to all dental providers in the network. Based on the complaint, there has been no "deprivation" in the constitutional sense and therefore no due process violation.[3]

### C. Qualified Immunity

Even if Plaintiff's claims against Defendants Long and Gillcrist in their individual capacities were not dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), they would be dismissed under the grounds of qualified immunity.

Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411(1985). The Supreme Court held that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery."

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights, of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.ed2d. 396 (1982). Qualified

---

[3] Plaintiff has raised an Article I, Section 10 Contract Clause claim in his Amended Complaint. Defendants have moved to dismiss the claim and Plaintiff's brief does not respond to the Motion to Dismiss. Therefore the Motion to Dismiss with regard to the Contract Clause claim is GRANTED for the reasons stated in Defendants' memorandum.

13

immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsible and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez¸* 540 U.S. 551, 567, 124 S.ct. 1284, 157 L.ed.2d 1068(2004). *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).

The qualified immunity analysis requires a court to answer the two questions. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show to the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And second, "whether the right was clearly established . . . in light of the specific context of the case." *Scott v. Harris*, 550 U.S. 372, 376 (2007). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier* at 201. The court can address these two questions in whatever sequence it determines is best. *Pearson v. Callahan*, 129 S.Ct. 808. The Sixth Circuit sometimes also considers a third question. When utilized, this third step requires inquiry into whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Swiecicki v. Delgado*, 463 F.3d, 489, 498-499 (6th Cir. 2006).

The key determination of whether a constitutional right was clearly established at the time of the alleged misconduct is whether a defendant moving to dismiss on qualified

14

immunity grounds was on notice that his alleged actions were unconstitutional. *Lyons v. City of Xeniz*, 417 F.3d 565, 579 (6th Cir. 2005), *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005). Because the focus of the analysis is on whether the official had fair notice that his conduct was unlawful, "reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "[T]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 438 U.S. 635, 639-40 (1987).

Even though Plaintiff's critical statements were protected under the First Amendment, it was not clearly established that Defendants' conduct deprived Plaintiff of a valuable government benefit or caused him adversity rising to the level of a constitutional violation under 42 U.S.C. § 1983. Indeed, as noted above, the Court has found that Defendants did not suffer a constitutional deprivation. Defendants, in their individual capacity, are entitled to qualified immunity for Plaintiff's claims.

III. State Law Claims

The Court has original jurisdiction over Plaintiff's Section 1983 Claims, and thus may exercise supplemental jurisdiction over Plaintiff's state law claim. 28 U.S.C. §1367(a). But the Court is vested with the further discretion to decline to exercise supplemental jurisdiction under certain circumstances, including instances when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(1) and (c)(3). Generally, if a federal claim is dismissed before trial, the state

claim should be dismissed as well. *Taylor v. First Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992).

Because all of Plaintiff's Section 1983 claims are dismissed against Defendants Long and Gillcrist the Court declines to exercise supplemental jurisdiction over his state law claims and as such they are dismissed, without prejudice, as well. Accordingly, Count II: Interference with Business and/or Contractual Relationship is dismissed without prejudice.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss Amendment Complaint on Behalf of the Defendants Wendy Long, M.D., and James Gillcrist, D.D.S., in their Individual and Official Capacities is GRANTED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE